Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| SUCN. DE FRANCISCO RIOLLANO CABRERA Y OTROS<br><br>Apelantes<br><br>v.<br><br>OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS Y OTROS<br><br>Apelados | KLAN202500499 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm. SJ2024CV03172 (908)<br><br>Sobre: Ley de Instituciones Financieras y otros |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Jueza Lotti Rodríguez

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de septiembre de 2025.

La Sucesión de Francisco Riollano Cabrera (en adelante, Sucesión o parte apelante) solicita que revoquemos la *Sentencia* dictada por Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI o foro primario) el 31 de enero de 2025, notificada el 3 de febrero de 2025, en la que desestimó la demanda del epígrafe, concluyendo que prescribió el término para solicitar las cantidades de dinero no reclamadas en la Oficina del Comisionado de Instituciones Financieras (OCIF).

Por su parte, la OCIF y el Departamento de Hacienda (en conjunto, parte apelada), presentaron su *Oposición a la Apelación.*

**I**

El 4 de abril de 2024, la Sucesión presentó una *Demanda* en contra de la OCIF en virtud de la Ley Núm. 55 del 12 de mayo de 1933, según enmendada, 7 LPRA sec. 1 *et seq.*, mejor conocida como la Ley

de Bancos (en adelante, Ley de Bancos).[1] En particular, alegó que al morir don Francisco Riollano Cabrera, padre de la parte apelada, dejó un caudal hereditario que incluía diversos tipos de bienes, entre los cuales se encontraban varias cuentas bancarias, a saber: (a) Cuenta Banco Popular de Puerto Rico Núm. 469-306632; (b) Cuenta Banco Popular de Puerto Rico Núm. 069-349525; (c) Cuenta Banco Popular de Puerto Rico Núm. 069-64229; (d) Cuenta Banco Popular de Puerto Rico Núm. 068-025807; (e) Cuenta Oriental Bank de Puerto Rico Núm. 4112000791; (f) Cuenta Oriental Bank Núm. 4113001390; (g) Cuenta Banco Santander Núm. 3106624045; y (h) Cuenta Cooperativa de Ahorro y Crédito de Camuy, Núm. 000001573.

Como consecuencia, y a solo seis (6) meses del fallecimiento de don Francisco Riollano Cabrera, la segunda esposa y ahora viuda de este, Sra. Gladys Ruiz Méndez, radicó una Demanda sobre Liquidación de Comunidad Hereditaria ante el Tribunal de Primera Instancia, Sala Superior de Hatillo. Dado a lo anterior, la Sucesión sostuvo que las partes entraron en un proceso de litigio que se extendió por casi seis (6) años y no fue hasta el día 3 de febrero de 2020, que estas informaron bajo juramento al Tribunal, que habían llegado a un Acuerdo Transaccional. Asimismo, adujo que no fue hasta el 19 de marzo de 2021, que pudieron finalmente radicar el Acuerdo Transaccional y solicitar al tribunal que dictara sentencia de conformidad con lo estipulado en el acuerdo, una vez el Departamento de Hacienda expidiera la Certificación de Cancelación de Gravamen. Por lo cual, el 24 de enero de 2022, el Tribunal dictó sentencia por estipulación, acogiendo el acuerdo transaccional. Dicho acuerdo adjudicó todos los bienes muebles y todas las cuentas bancarias y de cooperativas o de inversiones a don Francisco Riollano Cabrera, a favor de sus hijos.

---

[1] Apéndice I del *Recurso de Apelación,* págs. 1-21.

Así las cosas, la parte apelante sostuvo que comenzó a realizar las correspondientes gestiones de localizar los fondos de las cuentas bancarias y advino en conocimiento que varias de esas cuentas bancarias, habían sido enviados a la OCIF. La Sucesión arguyó que luego de múltiples misivas e intentos de hacer valer su derecho a reclamar dichas cuentas ante la OCIF, recibió una notificación de *Resolución* el 6 de marzo de 2024, firmada por la Asistente del Comisionado Auxiliar de la OCIF, donde le informaba que de su investigación surgían solo cuatro (4) cuentas, a saber: dos (2) del Banco Popular de Puerto Rico (BPPR), Núm. 469-306632 y Núm. 069-349525; una (1) cuenta Núm. 3106624045 del ya cerrado, Banco Santander de Puerto Rico; y, una (1) cuenta Núm. 4112000791 de Oriental Bank.

Sobre dichas cuentas, la Sucesión alegó que la OCIF determinó que las cuentas eran unas no reclamadas o abandonadas, según la Sección 37(a) de la Ley de Bancos, *supra.* Por lo tanto, la OCIF determinó que el término de tres (3) años a partir de la fecha de entrega de los fondos para reclamar las cuantías, ya se había cumplido el 12 de diciembre de 2022, conforme establece dicha sección de la Ley. Según las instrucciones de OCIF, la Sucesión solicitó al TPI que se revocara la determinación administrativa y resolución adjudicativa emitida por la agencia y ordenara la entrega o reembolso de los fondos pertenecientes a dichas cuentas bancarias.

Por su parte, el 8 de julio de 2024, la OCIF presentó una *Moción de Desestimación,* en la que, en síntesis, sostuvo que la demanda de la Sucesión no exponía una reclamación que justificara la concesión de un remedio y dejaba de acumular una parte indispensable.[2] Además,

---

[2] Apéndice II del *Recurso de Apelación,* págs. 22-66 (presentó los siguientes anejos en la *Moción de Desestimación*: (1) Certificación de la Resolución de la OCIF; (2) Solicitud de Investigación sobre Dinero y Otro Bienes Líquidos Abandonados o No Reclamados a la OCIF; (3) Notificación para recurrir al TPI; (4) Resolución de la OCIF; (5) Informe Inicial sobre las cantidades no reclamadas al 30 de junio de 2019; (6) Affidavit de primer aviso sobre cantidades no reclamadas; (7) Affidavit de aviso sobre cantidades no reclamadas; (8) Informe Final sobre cantidades no reclamadas; (9) Cheques al Departamento de Hacienda).

arguyó que la causa de acción bajo la Ley de Bancos, *supra,* estaba prescrita al haber pasado más de tres (3) años desde que el BPPR transfirió los fondos no reclamados. Asimismo, la OCIF alegó que este no recibe evidencia o información adicional a la indicada por los bancos y la requerida por ley, sino que descansa completamente en los reportes de los bancos. Por tanto, la parte apelada solicitó al foro primario que ordenara la desestimación de la *Demanda* contra la OCIF, el Departamento de Hacienda, y el Estado Libre Asociado de Puerto Rico.

Por consiguiente, el 28 de agosto de 2024, la Sucesión presentó una *Oposición a Moción de Desestimación* en la que sostuvo que la Ley de Bancos, *supra,* no expresa que el término de (3) años sea uno prescriptivo. La Sucesión alegó que dicho término prescriptivo fue interrumpido debido al evento de la pandemia del Covid-19, el cual tuvo como efecto la paralización, suspensión y cierre de las operaciones del gobierno. Por lo cual, señaló que no procedía la desestimación de la demanda por no estar prescrita la causa de acción.

Por su parte, el 16 de septiembre de 2024, la OCIF presentó una *Réplica a Oposición a Moción de Desestimación* donde arguyó que la Sección 37(e) de la Ley de Bancos, *supra*, otorgan a los bancos un tipo de inmunidad la cual está condicionada y está predicada en que los bancos actúen conforme a derecho.[3] Asimismo, sostuvo que los términos para realizar una reclamación no son meros ornamentos legales que se prestan a especulación. Por lo cual, señaló que el término de los tres (3) años es uno prescriptivo y, por tanto, no está facultada en ley para reintegrar los fondos. Como consecuencia de lo anterior, el 7 de octubre de 2024, la Sucesión presentó una *Dúplica a Réplica a Moción de Desestimación.*[4] De igual forma, ese mismo día, la Sucesión presentó *Demanda Enmendada.[5]*

---

[3] Apéndice IV del *Recurso de Apelación,* págs. 92-104.
[4] Apéndice V del *Recurso de Apelación,* págs. 105-111.
[5] Apéndice VI del *Recurso de Apelación,* págs. 112-130.

No obstante, el TPI declaró Ha Lugar la *Moción de Desestimación* y desestimó con perjuicio, la *Demanda* del epígrafe.[6] En síntesis, determinó que la Sucesión tuvo el tiempo suficiente para reclamar los fondos de las cuentas, no solo en el término de tres (3) años que dispone la ley, sino antes de que dicho término comenzara a de cursar. Dado que, los bancos emitieron los anuncios referentes a las cuentas abandonadas, por lo que la parte apelante tuvo forma de enterarse de las mismas y reclamar sus derechos. Asimismo, destacó que las cuentas bancarias formaban parte del caudal hereditario de su padre y estos conocían de la existencia de estas. En consecuencia, el foro primario resolvió que la causa de acción contra la OCIF se encontraba prescrita, pues no se realizó dentro del término establecido en la Ley de Bancos, *supra.* En cuanto a la alegación de falta de parte indispensable, sostuvo que los bancos no deben ser parte en el este pleito puesto que la propia Ley de Bancos, *supra,* lo prohíbe. Esto, ya que la referida Ley establece que no sostendrá acción alguna contra el banco o banco extranjero para recuperar cantidades entregadas al OCIF de acuerdo con las disposiciones de la ley o por alegados daños por tal entrega.

En desacuerdo, el 18 de febrero de 2025, la parte apelante presentó una *Moción de Reconsideración y Solicitud de Determinaciones de Hechos.*[7] Allí, alegó que dado a que el TPI no validó la *Demanda Emendada,* hace radicalmente nula la *Sentencia* al haber resuelto con la primera demanda que dejó de existir luego del 7 de octubre de 2024. Por su parte, el 19 de marzo de 2025, la parte apelada presentó *Moción en Oposición de Reconsideración.*[8] Así las cosas, el 2 de abril de 2025, el TPI declaró No Ha Lugar la *Moción de Reconsideración y Solicitud de Determinaciones de Hechos* presentada por la Sucesión.

---

[6] Apéndice XIV del *Recurso de Apelación,* págs. 145-156.
[7] Apéndice XV del *Recurso de Apelación,* págs. 157-176.
[8] Apéndice XVII del *Recurso de Apelación,* págs. 178-182.

Inconforme, el 2 de junio de 2025, la parte apelante presentó el recurso ante nos en el cual alegó los siguientes errores:

**PRIMER ERROR:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL SOSTENER UNA SENTENCIA PREMATURA Y NULA SEGÚN LEVANTADO Y ARGUMENTADO EN LA SOLICITUD DE RECONSIDERACIÓN.

**SEGUNDO ERROR:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO ACOGER Y DECLARAR NO HA LUGAR LA MOCIÓN DE RECONSIDERACIÓN Y DE SOLICITUD DE DETERMINACIONES DE HECHOS.

**TERCER ERROR:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR HA LUGAR LA MOCIÓN DE DESESTIMACIÓN PRESENTADA POR LA PARTE APELADA Y DESESTIMAR LA DEMANDA EN SU TOTALIDAD AL RESOLVER QUE LA CAUSA DE ACCIÓN CONTRA LA PARTE LA OCIF Y EL ELA SE ENCUENTRA PRESCRITA.

## II

### A. Moción de Desestimación

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, permite que el demandado solicite la desestimación de la demanda, antes de presentar una contestación. Las razones para solicitar la desestimación son las siguientes: (1) falta de jurisdicción sobre la materia, (2) falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento, (4) insuficiencia del diligenciamiento del emplazamiento, (5) dejar de exponer una reclamación que justifique la concesión de un remedio y (6) dejar de acumular una parte indispensable. *Costas Elena v. Magic Sport y otros,* 213 DPR 523, 533 (2024); *González Méndez v. Acción Social et al.,* 196 DPR 213, 234 (2016).

El Tribunal Supremo de Puerto Rico ratificó en *BPPR v. Cable Media,* 2025 TSPR 1 (2025) y en *Costas Elena v. Magic Sport y otros, supra,* las normas que rigen la desestimación de una demanda basada en el inciso 5 de la Regla 10.2, *supra.* Estas normas son las siguientes:

(1) La desestimación procede cuando de las alegaciones de la demanda, surge que alguna de las defensas afirmativas derrotara la pretensión del demandante.

(2) Al evaluar una moción de desestimación al amparo de la Regla 10.2 (5), *supra,* el tribunal tiene que tomar como ciertos todos los hechos bien alegados en la demanda, aseverados de manera clara y concluyente y que de su faz no dan margen a dudas.

(3) Los tribunales que atienden una moción basada en la Regla 10.5, *supra,* tienen que evaluar las alegaciones de la demanda conjuntamente, y de la forma más favorable para el demandante.

(4) Toda duda debe resolverse a favor del demandante.

(5) El demandado tiene que establecer con toda certeza que el demandante no tiene derecho a remedio alguno, bajo cualquiera estado de Derecho que se pudiera probar en apoyo a su reclamación. Véase, además, *Eagle Security v. Efron Dorado et al*, 211 DPR 70, 84 (2023).

La privación de un litigante de su día en corte solo procede en casos extremos. La desestimación al amparo de la Regla 10.2(5), *supra,* prosperará si luego de realizar el análisis requerido, el tribunal entiende que no se cumple con el estándar de plausibilidad. Los tribunales no pueden dar paso a una demanda insuficiente bajo el pretexto de que las alegaciones conclusorias podrán ser probadas con el descubrimiento de prueba. *Costas Elena v. Magic Sport, supra.* La demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar. *Casillas Carrasquillo v. ELA,* 209 DPR 240, 247 (2022); *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 429 (2008); *Reyes v. Sucn. Sánchez Soto*, 98 DPR 305, 309 (1970). Tampoco procede la desestimación si la demanda es susceptible de ser enmendada. *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra; Clemente v. Depto. de la Vivienda,* 114 DPR 763, 771 (1983). Se trata de considerar, si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida. *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra; Pressure Vessels P.R. v. Empire Gas P.R.,* 137 DPR 497, 505 (1994); *Unisys v. Ramallo Brothers*, 128 DPR 842, 858 (1991).

**B.** Ley de Bancos

La Ley Núm. 55 de 12 de mayo de 1933, según enmendada, mejor conocida como la "Ley de Bancos," provee el procedimiento a seguir por todo banco o banco extranjero sobre las cantidades en poder de dichas instituciones, mayores de un dólar ($1), no reclamadas por el depositante o por la persona con derecho a las mismas durante cinco (5) años. La Ley obliga a dichas instituciones a presentar un informe a OCIF por medios electrónicos al 30 de junio anterior, donde se hagan constar las cantidades no reclamadas. Excluyendo las (a) Cantidades debidas a un depositante, que hayan sido reducidas por retiro de fondos o aumentadas por depósitos, con exclusión del crédito por intereses, dentro de dicho período de cinco (5) años; o (b) Cantidades representadas por libretas de imposiciones en poder de depositantes, presentadas para entrada de crédito por intereses dentro de dicho período de cinco (5) años; o (c) Cantidades en relación con las cuales el banco o banco extranjero tenga evidencia escrita, recibida dentro de los cinco (5) años anteriores, de que la persona con derecho a tales cantidades tiene conocimiento de las mismas. Dicho informe expondrá el nombre de, y la cantidad adeudada a, cada depositante o acreedor, según aparezca de los récords del banco o banco extranjero, la última dirección conocida de dicho depositante o acreedor y la fecha de la última transacción en relación con las cantidades respectivas. Todos los nombres que figuren en dicho informe se ordenarán alfabéticamente. Así también, los bancos publicarán anualmente, una vez durante cada uno de los meses de agosto y septiembre en un periódico de circulación general y de publicación de por lo menos seis días a la semana, un aviso bajo el título "Aviso sobre Cantidades No Reclamadas en Poder de...". Dicho aviso deberá publicarse en forma de un listado general, ordenado alfabéticamente. Además, a partir del 1ro de enero de 2004, todo banco deberá publicar la información aquí requerida en su página de Internet y a partir del 1ro de enero de 2005,

la OCIF requerirá que cada institución someta dicha información electrónicamente, de manera que la página de Internet de dicha Oficina pueda preparar un listado global mediante el cual cualquier ciudadano pueda verificar en forma alfabética la existencia de cantidades no reclamadas en cualquier institución financiera de Puerto Rico. Tal aviso expondrá una lista consolidada, en orden alfabético, de los nombres de las personas que de acuerdo con el último informe rendido tengan derecho a reclamar cantidades montantes a cien dólares ($100) o más, el pueblo o la ciudad de la última dirección conocida de cada una de dichas personas, y una dirección en la Internet (World Wide Web) en la cual se podrá acceder copia de dicho aviso. Durante el mes de octubre siguiente, y no más tarde del día 10 de dicho mes, el banco o banco extranjero archivará con OCIF, una certificación de la publicación de tal aviso en un periódico de circulación general y en la página de Internet de la institución financiera o del tenedor. Copia de dicho aviso o del informe sobre cantidades no reclamadas se mantendrá expuesto para examen por cualquier persona interesada en un lugar visible y accesible de cada sucursal del banco concernido, desde la fecha de la publicación del aviso hasta el día 30 de noviembre de cada año. De igual manera, copia de dicho aviso o del informe sobre cantidades no reclamadas deberá publicarse por el banco o banco extranjero en la correspondiente página de Internet. Durante el mes de diciembre de cada año y no más tarde del día 10 de dicho mes, todo banco o banco extranjero que luego de publicar el aviso anteriormente exigido y de atender, conforme a derecho, las reclamaciones hechas, tenga en su poder cantidades no reclamadas, cualquiera que fuere su cuantía, hará entrega de las mismas al Comisionado, quien las transferirá al Secretario de Hacienda para ser ingresadas en el Fondo General del Estado Libre Asociado de Puerto Rico. Dentro del término de tres (3) años, a partir de la fecha de la entrega a OCIF de cualquier cantidad no reclamada, cualquier persona que creyere tener derecho a dicha

cantidad o parte de ella, podrá reclamarla al Comisionado.7 LPRA sec. 158.

Ahora bien, en caso de que se decidiere que la persona no tiene derecho a la cantidad reclamada, este podrá recurrir ante el Tribunal de Primera Instancia, Sala Superior de San Juan, dentro del término de treinta (30) días a partir de la fecha de la notificación de la resolución denegatoria de la OCIF. Íd. Dicho Tribunal tendrá competencia exclusiva para conocer del procedimiento en contra de la agencia. Íd.

Por otro lado, la Ley de Dinero y Otros Bienes Líquidos Abandonados o No Reclamados, Ley 36 de 1989 contiene el procedimiento relacionado a los bienes abandonados y no reclamados en posesión de personas jurídicas o naturales a los cuales no le aplique la Ley de Bancos.

**III**

La Sucesión alega que erró el TPI al dictar una sentencia prematura y nula que fue objetada en la oportuna *Solicitud de Reconsideración.* Sostuvo que el 7 de octubre de 2024 presentó Demanda Enmendada, antes de que OCIF presentara la contestación a la Demanda, con el propósito de aclarar que no estaba reclamando a la OCIF por los actos u omisiones de las instituciones bancarias, sino que le reclama a la OCIF por los propios actos y omisiones de dicha agencia, al incumplir con las obligaciones activas y pasivas que le impone la Ley de Bancos. Puntualizó que la Demanda Enmendada contenía aclaraciones que atendían tanto el argumento de parte indispensable como el de prescripción y, que para un término prescriptivo extintivo comenzar a cursar, la agencia tenía que haber cumplido con las obligaciones que le imponía la Ley. Arguyó que el TPI se apartó de la citada doctrina y no tomó como ciertos todos los hechos bien alegados en la demanda, ni los consideró de la forma más favorable para a la parte apelante. Recalca en su escrito que la sentencia recurrida

tampoco muestra de forma certera que no tiene derecho a remedio alguno bajo cualquier estado de Derecho aun interpretando la Demanda, que insiste es la Demanda Enmendada, lo más liberalmente a su favor.

Si damos como ciertos todos los hechos bien alegados de la *Demanda Enmendada* y lo interpretamos a favor de la parte apelante, la reclamación del epígrafe cumple con el requisito de plausibilidad. Ante la extensa reglamentación del proceso para declarar las cuentas como abandonadas no sorprende que la parte apelante reclame su derecho a confirmar si la OCIF cumplió con sus obligaciones y deberes ministeriales al recibir los fondos en cuestión, y cuando efectivamente comenzó a correr el término para entregar dichos fondos al Departamento de Hacienda. Por otro lado, como mínimo OCIF está obligada a reconocer las garantías mínimas del debido proceso de ley antes de privarle de su propiedad, como por ejemplo darle la oportunidad de ser escuchada y examinar el expediente. En fin, que tomando en consideración el derecho de propiedad de la parte apelante somos del parecer que la alegación de incumplimiento de la Sección 37(a) de la Ley de Bancos, *supra,* es una que en este momento es plausible por lo que no procede la desestimación de la reclamación. El comienzo del término prescriptivo, término que admite interrupción presupone que se ha cumplido rigurosamente con los requisitos de la sección 37 de la Ley de Bancos. Los plazos de prescripción comienzan a transcurrir cuando el legitimado activo conoce o debe conocer del derecho a reclamar y la identidad de la persona contra quien puede actuar. 31 LPRA sec. 9482.

De esto último, la Sección 37(a) de la Ley de Bancos, *supra,* impone a las instituciones financieras y que la OCIF debe velar que se cumplan, ciertas obligaciones respecto a las cuentas "no reclamadas". Según mencionamos, dicha sección exige el cumplimiento de lo siguiente: recibir unos informes anuales del 10 de agosto de cada año;

informes por medios electrónicos con información hasta el 30 de junio de dicho año; todo banco está obligado a publicar anualmente a partir del 1ro de enero de 2005, además de una publicación anual en agosto y septiembre en un periódico de circulación general por lo menos seis (6) días a la semana de un aviso de las cantidades no reclamadas y someter electrónicamente dicha información a la OCIF, para que la OCIF pueda preparar una lista global en su página de internet, en donde cualquier ciudadano pueda verificar de manera alfabética la existencia de cantidades no reclamadas en cualquier institución; el aviso no debe solo tener un orden alfabético de los nombres de cada persona con derecho a reclamar, sino que también expresará la ciudad de la última dirección conocida del ciudadano y una dirección en la en la que el ciudadano pueda obtener copia de dicho aviso; no más tarde del 10 de octubre, el banco archivará con la OCIF la certificación del aviso de la publicación de la circulación general y en la página de internet de la institución financiera y copia de dicho aviso deberá ser expuesto en un lugar visible y accesible en cada sucursal del banco hasta el 30 de noviembre de cada año y publicado en la página de internet del banco. La simple lectura de la antedicha sección muestra la rigurosidad exigida antes de disponer de los bienes abandonados.

Pese a que la parte apelada presentó prueba de algunos de los documentos que pueden demostrar el cumplimiento de los requisitos de la sección 37, supra, si tomamos como ciertos los hechos bien alegados en la demanda, quedan múltiples controversias sin resolver. Resta por evaluar si la OCIF incumplió con sus obligaciones al aceptar los fondos y permitir el cierre de tales cuentas, como se alega en la *Demanda Enmendada*. Así como, determinar si la OCIF le reconoció a la Sucesión las garantías mínimas de un debido proceso de ley. Después de todo la OCIF tiene la responsabilidad primordial de fiscalización y supervisión de las instituciones financieras que operen o hagan negocios en el Estado Libre Asociado de Puerto Rico. 7 LPRA

sec. 2003. Precisamente el apelado arguye que OCIF esta obligado a corroborar el cumplimiento de los requisitos procesales generales establecidos en la Ley de Bancos, supra[9]. Ese es el planteamiento de la parte apelante, que OCIF fallo en tal deber. Planteamiento que podrá incidir en el comienzo del término prescriptivo.

Recordemos, que la demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar. Además, que estos deben considerados de la forma más favorable para la parte apelante. Por tanto, si se resolviera toda duda a favor de la Sucesión, la demanda es suficiente para constituir una reclamación válida.

Finalmente, nos reiteramos que es imposible concluir que las alegaciones de la demanda son insuficientes para establecer una causa de acción a favor de la parte apelante. Por el contrario, entendemos que la Sucesión demostró en las alegaciones que tienen una causa de acción sobre la responsabilidad, si alguna de OCIF, al margen de su deber de cumplir rigurosamente con el proceso descrito en la sección 37, supra. Por tal razón, no procedía la desestimación al amparo de la Regla 10.2(5), ya que esta sí exponía una reclamación que justificaba la concesión de un remedio.

### IV.

Por los fundamentos antes expuestos, *revocamos* la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[9] Véase página 21 alegato en oposición.